Today's cases will be called as previously announced and times will be as allotted to counsel. The first case today is number 181548, United States v. Stephen Nygren. Okay, good morning. Good morning, your honors. May it please the court, Heather Clark on behalf of Stephen Nygren, I'd ask to please reserve two minutes for rebuttal. You may. Thank you. So I'd like to, there are two issues raised in the brief. One is that the court erroneously applied an obstruction of justice enhancement. The other that the court erroneously denied an acceptance of responsibility reduction. I want to focus today on the obstruction of So there are multiple facets to the argument that I presented on behalf of Mr. Nygren. The first piece is that malingering does not fit within a non-exhaustive list of conduct contained in Application Note 4 to 3C1.1 as an automatic matter. I think that argument What do you mean as an automatic matter? I think every malingering is not automatically in and of itself consistent with the conduct That's true, but we have a two-part question, don't we? We have a question first. Can malingering constitute obstruction of justice under the enhancement? And then the second question is whether the district court's factual finding that this malingering was an obstruction of justice is supportable. So in respect to the first question, whether malingering can constitute obstruction of justice, malingering in the form of feigned incompetency, we're not reinventing the wheel here. There are four or five circuits that have answered that question and they've all said that in a proper case it can. Do you dispute that proposition? I don't dispute that other circuits have addressed this issue. No, but do you dispute the proposition that in a proper case, if there is a sufficient quantum of factual proof that feigned incompetency can constitute an obstruction of justice? I don't dispute that. I think if there are certain findings that are made consistent with the non-exhaustive list of factors under Application Note 4, I think that certainly it is possible. I think that to get there, though, you have to look at that non-exhaustive list and I think the court has to then make a finding that the statements made by the defendant, first, are material, and then second, that those material statements significantly obstructed or impeded the prosecution. And I get to those points because I believe if you look at the conduct that's identified, conduct that is, that are statements made typically are required to be material under that Application Note. If you look to statements made to a non-court... Yeah, I think there are, the conducts, the examples concerning false statements have a materiality requirement, but the other examples, which are more numerous, don't. Well, many of those are just directly inapplicable. Certainly threatening or intimidating a witness is inapplicable here. There's no way that could feasibly fit within the parameters of the facts we're dealing with. Well, what about... Go ahead. Go ahead. What about F, providing materially false information to a judge? If we take the fact finding below, he knew the judge was going to be making a ruling on present competency, so he knew the results that he was, the information he was conveying in the test was going to be used to that, why doesn't this reasonably fit that definition? Because he's not making the statement to a judge. He's making the statement to a non-court officer. Sure, but it doesn't say making it to the judge. It says providing materially false information to a judge. So if a messenger arrives on your doorstep about ready to take a package to the judge and you give that person something false, I think you've provided materially false information to a judge, haven't you? And you know it's going to the judge. The first point I make is he didn't provide that information to the judge. So at the conference that happens on June, I believe it's 16th, he withdraws his motion, attempts to withdraw his motion for a competence hearing at all. And so if you go through the exhibit list, the exhibits are all court exhibits. He doesn't present the report to the judge. The second piece of it that I would offer is sort of going in broader strokes, I guess, at this point, the malingering finding in and of itself is not where the problem is. It's that the malingering finding helps the evaluator assess the other cognitive function testing, right? So the fact that he may have done poorly on this one or the two effort testing results in and of itself is not evidence of whether he is competent or incompetent to stand trial. Sure. An issue before the court is, can you see? And you're given an eye exam and you say, I can't see the chart at all. And so the eye examiner goes and tells the judge, I'm testifying, he can't see. You, in fact, were lying. You could see fine. That was a lie. Isn't that providing materially false information to a judge? And wouldn't that be analogous to what we have here? Instead of having a seen test, he's having a competency test. And instead of answering the questions accurately, the tester found that he malingered, i.e. intentionally gave false answers. So I think if we're getting to the facts, we need to break that up into several parts. So the first is whether we're talking about Dr. Kissinger or Dr. Donnelly. Because Dr. Donnelly did not find that he malingered. He found that the results of the effort testing were invalid, but he then provided multiple hypotheses of why those test results were invalid. And he said, I've reviewed all the medical treating reports that have been provided to me to date. I believe that the primary hypothesis as to why these results were invalid is that this is based on the level of rehabilitation he has experienced up to this point from his stroke. There's no question he experienced a stroke. There's no question that he had deficits from the stroke. The question is at what point those deficits are resolved. I would note, and I didn't put all of the, I gave you quite a voluminous appendix. I didn't give you everything from the various medical providers. I just provided the discharges. No one has disputed the validity of those records. That he did, in fact, sustain appropriate improvements within his treating medical providers, particularly the speech therapists through swallowing. Is there some evidence in your record of somebody testifying to the effect that he was malingering? So Dr. Kissinger. All right, so is that sufficient for the court? I mean, if the court bases its findings on that, how do you dispute that? How can you recoup that, I should say that, recoup that? Certainly. So I think when you're looking, again, at the malingering testing, Dr. Kissinger did not perform any cognitive function testing. The effort testing, the VIP and the Tom tests that were performed, the purpose of those is to assess whether Mr. Nygren was providing appropriate effort on the cognitive function testing. She didn't perform that testing. So the malingering result in and of itself did not inform, it was not material to her determination of whether he was competent to stand trial. But she is a highly qualified expert. Indeed, her qualifications were never disputed at sentencing. She offered opinion testimony directly to the point, and the sentencing judge accepted that expert testimony. The test is clear error. How can that be clear error for the district court to accept the testimony, uncontradicted testimony, of a qualified expert? Well, I dispute respectfully that it was completely uncontradicted. So Dr. Donahue also testified at the sentencing hearing that he reviewed the underlying data that she relied on in the effort testing, and he came to a different conclusion as to some of it. He came to basically a conclusion that he couldn't come to a conclusion that there were a lot of different possibilities. But he did not in any way rule out the conclusion that she came to. May I respond? You may quickly respond. Certainly. So what I would highlight is that on the MPPI-2 testing, he indicated that there was not a reason not to continue to the cognitive function testing because that result was not sufficiently elevated. And I will actually reserve the rest for rebuttal. Thank you. Mr. Block, good morning. Good morning, Your Honors. Benjamin Block on behalf of the United States. Respectfully, while the issue presented in this case is a matter of first impression in this circuit, no fewer than seven other circuits have considered the question of whether malingering in the context of a competency evaluation can constitute obstruction of justice. And all of those circuits have found that it can. There are no circuits that have found that it cannot. And we would ask this Court to follow that week of authority. The defendant makes a number of claims regarding the other circuits failing to assert a standard with respect to finding malingering. And we would respectfully suggest that the standard is that set forth in the sentencing guidelines in Section 3C1.1, where the court must find that defendant willfully obstructed or disobey the administration of justice with respect to the investigation, prosecution, or sentencing. That, Your Honors, is the standard that is applicable here. And I would follow on Judge Cao's comments that the conduct at issue here falls squarely within Comment Note 4F involving providing materially false information to a judge. It also, I think, falls within Comment Note 4C, which relates to producing or attempting to produce a false record during a judicial proceeding. And it also arguably falls within Comment Note 4A, which involves unlawfully influencing a witness or attempting to do so. There are respectfully a number of... I'm just curious as to this emphasis on the selectivity of the statute of limitations. I mean, the statute of limitations is a statute of limitations. It's not a statute of limitations. It's a statute of limitations. And it's a statute of limitations. And if you look at the list, the guidelines make clear that the examples that are set forth are a non-exhaustive list and that cases are likely to be sui generis. Every case is case specific. So why is it dispositive or non-dispositive that this conduct appears to be covered by certain of the examples? The examples are non-exhaustive. And the guideline itself makes clear that obstructive conduct is not, quote, not subject to precise definition. There will be different types of obstructive conduct. And these examples are merely a guide for courts to use. But the real, I would say, the core of the guideline is a finding that courts are not subject to precise definition. It's a finding that the defendant engaged in willful conduct in an effort to avoid prosecution or responsibility. And I think that the proposal of the defendant for this multi-pronged test of whether or not malingering qualifies is actually inconsistent with that aspect of the guidelines, which suggests that there's a broad range of conduct that might apply. And it leads to a situation in which the court is, would be sort of unduly restricting what conduct might qualify for the enhancement. For example, the requirement that the conduct, that the obstructive conduct be material and also relevant conduct is contrary to the guidelines. Does the record show how much delay was caused by the defendant's conduct? Respectfully, no delay must be shown. I'm asking, how much time was used in trying to determine the allegations of the defendant?  The request was made in October of 2016, I believe. And the finding of competency was not made until June of 2017. And throughout that time, Mr. Nygren was undergoing various evaluations. But that's complicated, Mr. Blatt, because this is a case, the government's position isn't that there was no basis for asking for a competency determination. So that some time would have been consumed, even if there had been no attempt at malingering. That's correct. I don't think the government had any objection to the initial competency evaluation. But that said, and this is something that the court, the Fifth Circuit and Greer commented on, the fact that you had a valid reason to request a competency evaluation does not permit you to then use that evaluation to pretend to be incompetent. No, I agree with that. I'm merely saying that it's not really fair to say that to measure the period of the delay by the way you just did, by using the entire eight-month period between the start and the finish of the competency proceedings. I think it's fair to say that the delay in this case, if the finding of malingering can be upheld, is more like four months than eight months. That's the period attributable to how much time was wasted because of the need for the second examination, et cetera, et cetera. That certainly would be a fair way to look at it. Another way to look at it would be, even if we give him the benefit of the doubt with respect to the initial 60 days, that it took to do Dr. Donnelly's initial evaluation, that Dr. Donnelly's reportedly was issued in either November or October. And had he not malingered during that time, Dr. Donnelly probably would have been able to conclude that he was competent. And so you could measure it from as early as November. But I think it's also fair to say that the delay began with his imprisonment at Devins for that assessment. But regardless of the length of the delay, the guideline doesn't require the government to prove that there was any substantial delay because the guideline covers attempts. And so even had there been no delay, if this were a willful premeditated effort by the defendant to malinger and thereby escape responsibility for his offense, that that would be sufficient for the enhancement. I would note with respect to opposing counsel's statements that Dr. Donnelly's initial evaluation was not sufficient. That Dr. Kissin did not do cognitive testing and therefore her findings of malingering are not material. The reason that Dr. Kissin did not do cognitive testing was because the results of the effort testing were so poor that any cognitive testing would have been meaningless. The results would have been meaningless and so she didn't waste her own time conducting those tests. But she did note that the scores that Mr. Nygren received on his effort testing were significantly below what would be expected of someone suffering from acute effects of traumatic brain injury. And indeed she noted that his scores with Dr. Donnelly, which were even lower, were, quote, not a score that is within a possibility for any individual even with grave cognitive deficits. So I think that the court's finding of malingering here was amply supported by the record. I don't think a finding of clearly erroneous is possible. And we would ask the court to find that malingering in a competency evaluation can constitute obstruction of justice, that the standard to apply is that set forth in Section 3C.1.1 of the guidelines, and affirm the district court sentence. Thank you. I want to start in rebuttal by reading the second portion of 3C.1.1 that counsel omitted. It's not only subsection one. You have to prove and subsection two, which is that the effective conduct related to the defense offense of conviction or any relevant conduct. I provide analysis in my brief of relevant conduct, which certainly can include, under the definition under 1B.1.3, conduct attempting to avoid detection or responsibility for the offense. I appreciate that fact, and I lay out that argument. But relevant conduct is a piece that the guideline itself requires the district court to find. That's not some superfluous thing that Mr. Nygren came up with on his own. I also would highlight that the principles of statutory construction are precisely why Mr. Nygren is arguing that you have to look at the non-exhaustive list of factors. This court can't legislate and can't, you know, do what the Sentencing Commission was authorized to do by saying, well, we're including some new thing entirely. You have to look at the list, and you have to give meaning to the conduct that's included on that list. No, no, but the Sentencing Mission has warned us that obstruction of justice is likely to be a part of the statute. It's likely to be case-specific, and has told us that that list does not contemplate all of the different ways in which obstruction of justice can manifest itself. No, and I appreciate that fact, and I'm not disputing that. What I'm saying is that to then come up with an additional conduct, come up with additional conduct that's not on that list, you can't ignore the conduct that already is on the list and how the Sentencing Commission has defined it. No, you can't ignore the examples by the same token. You're not arguing, are you, that we're limited in some way to the examples, that if conduct doesn't come within one of the examples, it can't be obstruction of justice for purposes of the enhancement? Because that would contravene all the case law that I'm aware of. So what I'm arguing, if I'm not seeing it articulately, is that you have to look to that list. You can't go outside that list and say, you know, paint with broad strokes and say anything can fit within there. You have to look at that list and see what the Sentencing Commission has identified. And certainly you don't have to say it fits within specifically subsection F or subsection G, but you have to say this is how the Sentencing Commission has defined this conduct. And the conduct I'm articulating, or arguing here, respectfully, is that the malingering, the way the facts apply in this specific case, don't come within that. And so I thank the court for your time. Thank you.